**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JACK HALL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **A-24-CV-952-ML** |
| | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## ORDER

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration in his official capacity ("the Commissioner"), denying disability benefits to Plaintiff Jack Hall. Before the court are Plaintiff's Complaint (Dkt. 5); Plaintiff's Opening Brief in Support of Claim (Dkt. 9); Defendant's Brief in Support of the Commissioner's Decision (Dkt. 12); Plaintiff's Reply Brief (Dkt. 13); and the administrative record (Dkt. 7).[1]

This case was referred to the Magistrate Judge by United States District Judge Robert Pitman pursuant to 28 U.S.C. § 636(b). Both parties have waived the right to proceed before a District Judge and have consented, pursuant to 28 U.S.C. § 636(c), to have all proceedings in the case, including the entry of final judgment, conducted by the Magistrate Judge. Dkts. 14, 15. Having considered the briefing, the record below, and the case file as a whole, the Magistrate Judge now enters the following Opinion and Order.

## I.    PROCEDURAL HISTORY

On November 18, 2020, Plaintiff Jack Hall ("Hall") filed an application for a period of disability and disability insurance benefits, claiming disability due to various physical and mental

---

[1] Reference to the record of administrative proceedings is designated by Tr. [page number(s)].

ailments since December 1, 2018. Tr. 17; *see also* Dkt. 9 at 1. Hall claimed these disabilities resulted from a boating accident in August 2016. *Id.* at 2. His claim was denied at the administrative level initially and upon reconsideration. Tr. 17. Hall then requested a hearing, *id.*, and Administrative Law Judge ("ALJ") Timothy Christensen conducted two hearings on November 9, 2022 and October 5, 2023. *Id.* at 36, 55. ALJ Christensen conducted both hearings via telephone. *Id.* at 17. Hall, his counsel, and two vocational experts ("VE") appeared over video and phone. *Id.* at 38, 57. The ALJ issued an unfavorable decision on December 11, 2023. *Id.* at 30.

Hall appealed. The Appeals Council denied his request for review of the ALJ's decision on June 13, 2024, thereby making the ALJ's decision the Commissioner's final administrative decision. Dkt. 9 at 2. Hall filed this action on August 19, 2024, seeking judicial review of the ALJ's decision. Dkt. 1.

## II.    DISCUSSION

### A.    Standard of Review

Judicial review of the ALJ's decision is limited. Specifically, the district court reviews: (1) whether the ALJ's decision was supported by substantial evidence; and (2) if so, whether the ALJ made any errors of law in evaluating the evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). As a result, the court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial

evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### B.    Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reasons of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett*, 67 F.3d at 565. Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C.      **The ALJ's Decision**

In his written decision issued December 11, 2023, the ALJ determined as a threshold matter that Hall met the insured status requirements of the Social Security Act through December 31, 2022. Tr. 17-18. The ALJ then engaged in the standard five-step sequential process, finding at step one that Hall did not engage in substantial gainful activity ("SGA") between his alleged onset date and the date he was last insured. *Id.* at 19. At step two, the ALJ found that Hall has the following severe impairments: osteoarthritis of the right shoulder status post injury, degenerative joint disease of the left shoulder, diabetes mellitus, essential hypertension, degenerative disc disease of the lumbar spine, bilateral osteoarthritis of the hips, depression, and anxiety. *Id.*; 20 CFR § 404.1520(c). The ALJ addressed Hall's obesity and determined that Hall's related symptoms were non-severe. Tr. 20; 20 CFR § 404.1521.

At step three, the ALJ determined that Hall did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 20.

4

Before reaching step four, the ALJ determined that Hall retains the RFC "to perform light work as defined in 20 CFR 404.1567(b) except can frequently reach overhead, is capable of understanding, remembering and carrying out simple routine tasks and only occasional changes in the work setting." *Id.* at 22. In making this RFC assessment, the ALJ determined Hall's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 23.

Continuing on to step four of the sequential evaluation process and relying on the testimony of the VE, the ALJ found Hall was unable to perform any of his past relevant work as a Heavy Equipment Operator. *Id.* at 29. The ALJ then noted that Hall was born on December 28, 1970, was a younger individual, age 18-49, through the alleged onset date of disability, and was 52 years old on the date last insured. *Id.* Hall has since changed age category to closely approaching advanced age. Additionally, the ALJ noted Hall has a limited education and that transferability of job skills was not material to the determination of disability under the Medical-Vocational Rules. *Id.*

Moving on to step five, and again relying on the testimony of the VE, the ALJ found that Hall could perform light, unskilled work in occupations such as a packer, sorter, and small products assembler. *Id.* at 30. Finding Hall capable of performing other work, the ALJ concluded that Hall has not been under a disability, as defined in the Social Security Act, at any time from December 1, 2018 through December 31, 2022. *Id.*

### D.    Issue Presented

Hall asserts one primary issue—whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence of record on the whole. Dkt. 9 at 1.

### E.    Analysis of Hall's Claim

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545. The responsibility to determine a claimant's RFC belongs to the ALJ. *Id.* § 404.1546; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine Hall's abilities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Hall's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. The relative weight to be given to the evidence, however, is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Hall bears the burden to establish disability and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. §423(d)(5); 20 C.F.R. §§ 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). Hall's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability. *See id.* §§ 404.1508, 404.1528, 404.1529.

Hall contends that the ALJ failed to impose a sufficient limitation on his reaching ability and failed to account for his diabetic nephropathy when determining Hall's RFC. For these two issues, Hall also argues that the ALJ did not sufficiently address later record evidence that showed the worsening of his conditions.

### 1.    *Shoulder Deterioration*

Hall presents a twofold argument regarding his shoulder—first, that the ALJ did not place a high enough restriction on Hall's reaching ability and second, that the ALJ did not sufficiently address his conditions after September 2021. The relevant period for determining Hall's disability is December 1, 2018,[2] the alleged onset date, through December 31, 2022, the date last insured. The ALJ must consider evidence from within that period as Hall is required to establish a disability before the date he was last insured in order to be entitled to a period of disability or disability insurance benefits. *See* 20 C.F.R. § 404.131; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

Hall argues that the ALJ's determination that Hall could reach overhead "frequently" is not supported by substantial evidence and that the ALJ did not properly address the functional impact of the significant trauma to Hall's shoulder from the boating accident in 2016.[3] Dkt. 9 at 17. However, the undersigned finds that the ALJ thoroughly considered the objective medical evidence from the entire relevant period. Tr. 22-29.

To begin his discussion of Hall's shoulder condition, the ALJ noted that Hall had been able to "work at substantial gainful activity levels in the several years after this admittedly significant trauma." Tr. 23. It is undisputed that Hall had earnings at an SGA level in 2017 and 2018. Dkt. 9 at 17-18; Tr. 227-36. Hall's earnings fell below SGA level in 2019, and he did not have any earnings in 2016 or after 2019. Tr. 227-36. Hall argues that his certified earnings record refutes the ALJ's presumption that Hall was able to work at an SGA level for several years after his

---

[2] At the second hearing, Hall's attorney appears to make an oral motion to change Hall's alleged onset date for the purpose of placing Hall in a higher age bracket. Tr. 64-65. However, there is no indication that the alleged onset date was changed, nor is the change reflected in the ALJ's decision. *Id.* at 17.

[3] Hall fell off a boat and was injured by the propeller. Dkt. 9 at 17. His right arm was lacerated in six places as were his upper back and left proximal neck. *Id.* He sustained a right humerus cortical fracture. He also sustained deep soft tissue and intramuscular lacerations, the more medial extending through the trapezius muscle and more lateral through the deltoid muscle. *Id.*; Tr. 1010, 1029, 1032, 1034. He underwent 5 hours of surgery to suture his lacerations; repair his right forearm extensor muscle; repair his right brachioradialis, lateral deltoid, posterior deltoid, and trapezius muscles; and repair his fascia. *Id.*; Tr. 946, 1010, 1050-52.

injuries. However, the undersigned does not find the ALJ's statement to be untruthful considering Hall had two full years of SGA post-injury.

The ALJ next considered medical examinations and evaluations through December 2022 and even referenced an evaluation conducted by Dr. Gupta, a consultative examiner, from April 2023, over ninety days after the expiration of the date last insured. *Id.* at 22-28. The ALJ considered opinions and evaluations by Franklin Chang, M.D., Hall's primary care provider, who saw Hall many times in the relevant duration. *Id.* Dr. Chang often provided Hall with Kenalog or Celestone injections for pain Hall felt in his right shoulder and referred Hall to other specialists for any issues that arose. *E.g., id.* at 762, 946-49, 2039-42, 2414-16, 2478. Multiple medical professionals recommended physical therapy to Hall, and the ALJ considered Hall's experience with physical therapy. *Id.* at 26. For instance, Hall began physical therapy in March 2022 for his right shoulder after experiencing weakness and positive impingement tests, and by April, Hall denied right shoulder pain upon examination. *Id.* at 26, 1767-68, 1834.

A treating clinician, PA Michael Rojas, found on a checkbox form in November 2022 that Hall's right shoulder impingement would be aggravated with repetitive reaching, handling, and fingering as required in most administrative work tasks; however, the ALJ noted that PA Rojas wrote in "possibly" next to the available options despite checking "yes." *Id.* at 28, 2174. PA Rojas indicated that Hall could frequently reach overhead with his left arm, reach forward with both arms, constantly handle and finger with both hands, and occasionally reach overhead with his right arm. *Id.* at 2175. When asked to "please describe" his findings, PA Rojas did not elaborate, and the ALJ found this medical opinion to be not persuasive due to its "check the box" format. *Id.*; *see DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017) ("checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record

evidence supporting a finding of no disability"). Dr. Gupta's April 2023 assessment, which the ALJ found only partially persuasive, indicated that Hall could frequently lift and carry up to fifty pounds and frequently reach overhead with both hands, in any direction, handle, finger, push/pull, and feel. Tr. 2185, 2187. The ALJ found that record evidence did not support Dr. Gupta's manipulative limitations. *Id.* at 28.

Finally, the ALJ discussed a focused musculoskeletal exam from an appointment with Deepak Davidson, M.D., a treating psychiatrist, on December 22, 2022. *Id.* at 27, 2468. Hall questions how the ALJ could apply the word "normal" to Hall's physical condition, but the undersigned understands it as a direct quote from several evaluations, including Dr. Davidson's notes that read, "[m]uscle strength and tone appeared grossly within normal limits." *Id.* at 2468.

The ALJ further considered that Hall's shoulder could be aggravated by heavy lifting. *Id.* at 25, 759. However, the ALJ found that Hall had a "fairly routine and conservative" course of care that includes physical therapy, medication, and injections and discussed that Hall was not a surgical candidate during the relevant period *Id.* at 23, 25, 762. The ALJ acknowledged Hall's "pain, fatigue, reduced ranges of motion, back pain, problems lifting, and overall reduced physical function" and found that these issues limit Hall to "only light work." *Id.* at 27. "These signs and symptoms as well as positive provocative testing, shoulder weakness, and some isolated indications of shoulder atrophy and muscle loss are accommodated in finding he can only frequently reach overhead." *Id.*

Generally, it is the ALJ's province to weigh the credibility of the claimant and other witness' testimony, particularly regarding subjective testimony concerning symptoms and abilities. *See Ramirez v. Colvin,* No. No. 14-20563, 2015 U.S. App. LEXIS 5882, *10 (5th Cir. Apr. 10, 2015) (unpublished) (citing *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000) ("great

deference" is given to the ALJ's assessment of credibility). The ALJ addressed several years' worth of evaluations, comprising the bulk of his decision, and he spent much of his time assessing Hall's complaints alongside the medical professionals' treatment plans, the medications Hall was prescribed and their effectiveness, and factors that aggravated Hall's symptoms. Tr. 22-28; *see* 20 C.F.R. § 404.1529(c)(3) (describing factors an ALJ can use to evaluate a claimant's symptoms, including pain). Furthermore, the ALJ did not find Hall's account of his pain or symptoms supportable because, although Hall testified he struggled carrying groceries and signing his name with his right hand, he worked for two years after his injury at an SGA level; he aggravated his shoulder while doing "heavy lifting"; and he had a burn from his motorcycle exhaust pipe in July 2020. Tr. 24-25, 44, 759, 783.

The substantial evidence test asks that the court determine whether a "reasonable mind might accept as adequate to support a conclusion" the evidence reviewed. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). This standard is "not high." *Id.* As discussed, the ALJ considered medical examinations evaluations throughout the end of 2021 and all of 2022, and even expressly considered an assessment from after the relevant period. Therefore, the undersigned cannot find that the ALJ did not consider evidence after September 2021 and, instead, finds that the ALJ considered and relied on substantial evidence throughout the entire relevant temporal period in determining Hall's RFC.

It is the ALJ's responsibility to resolve any factual inconsistencies in the record. It is the court's responsibility to ensure the ALJ's decision is supported by more than a scintilla of evidence and that the ALJ properly applied the relevant standards. The court cannot find the ALJ erred in this case without substituting his judgment for that of the ALJ, which he will not do. As is evident

from the undersigned's discussion of the ALJ's decision, the undersigned finds the ALJ's decision

to be supported by substantial evidence, including evidence until and after Hall's date last insured.

### 2. *Diabetic Nephropathy*

Hall argues that the ALJ did not account for his diabetic nephropathy when making his

RFC determination despite well-documented evidence of his diabetic nephropathy and neuropathy

in the record. Dkt. 9 29-30. He further relies on testimony by the VE at the second hearing in which

the VE stated that a limitation to four hours of standing and walking in a workday would result in

a sedentary classification. Tr. 63. Hall states that a limitation to sedentary employment, along with

Hall attaining the age of 50, a limitation to simple routine tasks, and an inability to perform past

relevant work would result in a finding of "disabled" under the Medical-Vocational Guidelines

Rule 201.12. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00, Tbl. No. 1, Rule 201.12; Tr. 32.

In response, the Commissioner argues that the ALJ considered the effect of Hall's diabetic

neuropathy on his ability to use his hands and that the ALJ noted Hall's diabetes was stable and

under control. Dkt. 12 at 7-8. The ALJ considered whether Hall had peripheral neuropathies that

met the severity of the listed impairments at Step 3 and concluded they did not. Tr. 20-21. In his

discussion of Hall's RFC, the ALJ did address the documented instances of swelling and pain in

Hall's extremities as well as the management of his diabetes and determined Hall had the RFC to

perform light work.[4] *Id.* at 23-27.

---

[4] The differences between sedentary and light work are as follows:
> (a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a
> sedentary job is defined as one which involves sitting, a certain amount of walking and standing is
> often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.
> (b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a
> job is in this category when it requires a good deal of walking or standing, or when it involves sitting
> most of the time with some pushing and pulling of arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must have the ability to do substantially all of

As early as February 2019, Dr. Chang included nephropathy amongst Hall's conditions. Tr. 514. Dr. Chang diagnosed Hall with type 2 diabetes mellitus with diabetic nephropathy and noted that Hall's "[d]iabetes has been stable but not optimally controlled [and Hall] does have nephropathy secondary to his diabetes." *Id.* In June and July 2019, Hall visited Dr. Chang with swelling and foot pain. *Id.* at 532-36, 557, 560. Dr. Chang diagnosed Hall with gout, possible Morton's neuroma, and prescribed Prinivil for Hall's diabetic nephropathy. *Id.* In July 2019, Dr. Chang referred Hall to Dr. Elliott Hudson, D.P.M., at Baylor Scott & White Podiatry. *Id.* at 560. Dr. Hudson diagnosed Hall with bilateral capsulitis of his second metatarsophalangeal ("MTP") joints and bilateral plantar fasciitis, gave Hall injections to his bilateral second MTP joints, and scheduled him for the fitting of functional foot orthoses. *Id.* at 586. In January 2023, after the relevant period, Dr. Hudson assessed Hall for foot pain and diagnosed him with neuropathy among other issues. Tr. 2492.

In the first half of 2019, Hall experienced issues with swelling and pain in both feet, and his diabetes was not optimally controlled at this time. Tr. 509, 513. The ALJ noted Hall had some swelling and pain in both feet in June 2019, but his physical exam was largely normal and his diabetes was deemed "under control." *Id.* at 24, 512-13, 535-36. In September, Hall had improvement in foot pain and full strength upon examination, and Dr. Hudson recommended metatarsal pads. *Id.* at 24, 653-55. By December, the ALJ notes that Hall's diabetes was found to be under control, his blood pressure was at goal, and findings on his physical exam were "wholly" normal. *Id.* at 24, 701-04.

---

these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567 Physical exertion requirements.

For the next two years after July 2019, Hall did well with his diabetes and his symptoms were mostly under control, *id.* at 605, 609, 701, 704, 786, but Dr. Chang noted that Hall needed to do better with his diet and take his diabetes medications regularly. *Id.* at 855-56. At exams in October and December 2022, Hall contends he experienced renewed issues in his extremities including swelling of his hands and ankles and inflammation of his MTP joint. *Id.* at 2150, 2441. Hall presented to Dr. Chang with swelling in his hands and feet, and Dr. Chang diagnosed Hall with bilateral hand edema. *Id.* at 2150, 2153. In December 2022, Dr. Chang referred Hall to a neurology specialist for bilateral hand paresthesia. *Id.* at 2441. The ALJ considered contemporaneous exams and noted that while Hall had some muscle loss, he had an equal grip strength and intact sensation in his hands; no indications of weakness, deficits in ranges of motions, or gait problems; and had a largely normal focused musculoskeletal exam on December 22, 2022. *Id.* at 26-27, 2414-15, 2441, 2444, 2468. Accordingly, the ALJ found Hall's statements at the hearing concerning the intensity, persistence, and limiting effects of these symptoms to be not entirely consistent with the medical evidence in the record. *Id.* at 23-25.

The ALJ considered Hall's testimony from the hearing that Hall cannot lift his right arm up; can only lift up to 3 to 5 pounds; can only walk about 100 yards, and that his feet and ankles swell and tingle when he attempts to walk too much; cannot do many chores around the house; and that he had to sell a motorcycle because he could no longer drive it. *Id.* at 22-23. The ALJ considered Hall's written accounts in which Hall wrote he has a weak grip on his right side; he can prepare simple meals but cannot do most chores; he can drive a vehicle; he can lift 5 to 10 pounds for up to 3 minutes before experiencing pain; and he can only walk for 30 to 75 yards and uses a brace. *Id.* at 23.

In the second hearing, on October 5, 2023, Hall's attorney and the VE discussed the duration for which it is recommended that Hall can stand and/or walk in a workday. Tr. 61-65. This discussion, Hall's attorney claimed, was based on a form completed by Michael Rojas, PA-C, Tr. 2173-76. *Id.* at 65. However, PA Rojas's form predominantly addressed reaching, fingering, and handling—or the use of Hall's arms.[5] *Id.* at 2173-76. The only mention of sitting or standing came when the form asked, "is Mr. Hall able to do work requiring him to be on his feet more than 2 hours in an 8-hour workday," and PA Rojas selected the option for "[y]es, he could perform such work on a regular and consistent basis." *Id.* at 2175.

In his decision, the ALJ considered the following medical opinions regarding Hall's abilities to walk and stand: a visit with Dr. Gupta in February 2021, during which Hall "denied difficulty walking" and Dr. Gupta noted normal gait, normal heel and toe standing, difficulty with tandem walking, no edema, cyanosis, or clubbing in Hall's extremities, and diagnosed Type 2 diabetes mellitus without complications, Tr. 25, 806-07; an examination by a state agency examiner, Dr. John Gabriel, in which he found that Hall could stand and/or walk for up to six hours in a workday and sit for up to six hours in a workday when examining the record evidence through October 2021, *id.* at 27, 86, 92; and an assessment from April 2023, in which Dr. Gupta found that Hall could stand for four hours in a workday, walk for four hours in a workday, and sit for eight hours in a workday, *id.* at 28, 2186.

The ALJ found Dr. Gabriel's Disability Determination Explanation of Hall's physical abilities on reconsideration largely persuasive and consistent with other evidence in the record. *Id.* at 27-28. The ALJ described the examiner's thorough and detailed recitation of the available evidence and objective citations, despite not having the full range of evidence available to him,

---

[5] As addressed earlier, the ALJ did not find this opinion persuasive as it marshalled little objective evidence due to its "check the box" format. Tr. 28.

and the ALJ found that Hall's conditions, including his "diabetes . . . responded reasonably well to appropriate medication and treatment." *Id.* at 28. The ALJ found Dr. Gupta's April 2023 assessment only partially persuasive as it was after the date of last insured and found Dr. Gupta's manipulative and environmental limitations to be not fully consistent with the rest of the record, but he did not express any issues with Dr. Gupta's medical opinion on Hall's ability to stand or walk. *Id.* at 28.

Hall further argues that the ALJ did not consider the full range of evidence on the record because by October 2022 and beyond, Hall's symptoms from diabetic nephropathy and neuropathy were significantly progressing causing swelling, numbness, and paresthesia in Hall's extremities. Dkt. 9 at 31. However, the undersigned finds that the ALJ did consider the full range of evidence. Despite it post-dating the date last insured by over ninety days, the ALJ did consider Dr. Gupta's April 2023 assessment and found it to be partially persuasive. Tr. 28. In his assessment, Dr. Gupta found that Hall could use his hands frequently in all categories, that Hall could use his feet continuously in all categories, and that Hall could stand for two hours without interruption, walk for four hours without interruption, and sit for eight hours. *Id.* at 2186-87. This assessment is identical to, if not more generous than, Dr. Gabriel's October 2021 assessment, which found that Hall could stand and/or walk for up to six hours and sit for up to six hours.

Several times throughout his decision, the ALJ noted that Hall's diabetes was stable and found that the record did not support placing a limitation on Hall's ability to handle objects. *Id.* at 25-28. An assessment in January 2022 showed Hall displayed weakness in his right arm and hand; however, findings in July and October 2022 showed that Hall had a normal range of motion in his hands as well as equal grip strength and intact sensation. *Id.* at 25, 1890, 2415. Furthermore, when finding PA Rojas's opinion regarding manipulative limitations not persuasive, the ALJ found that

the opinion was "not supported by sufficient objective findings including wasting or atrophy in the hands or objective evidence of reduced grip strength per JAMAR testing." Tr. 28. The ALJ also considered that "multiple sets of findings were largely normal." *Id.* at 23. There were isolated findings of 3/5 strength and atrophy, "but these tended to be isolated and scattered as opposed to regular and continuing." *Id.* at 23-24. Finally, the ALJ found that Hall's hypertension and diabetes responded reasonably well to appropriate medication and treatment. *Id.* at 27-28. The undersigned finds that the ALJ did consider the effects of Hall's diabetic conditions on his hands and made credibility determinations based on supportability and consistency to conclude that manipulative limitations were not required.

Therefore, the ALJ's assessment of the effect of Hall's diabetic conditions on his extremities and determination regarding Hall's manipulative limitations and ability to stand, sit, and walk are supported by substantial evidence. The undersigned finds that the ALJ relied on substantial evidence to decide that Hall could complete light, as opposed to sedentary, work.

## III.    CONCLUSION

The task of weighing evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The task of the court is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Id.* (citing *Greenspan*, 38 F.3d at 240). Substantial evidence supports the ALJ's decision in this case, so it must be affirmed. Therefore, it is **ORDERED** that the Commissioner's decision in the above-styled cause is **AFFIRMED** in its entirety and the case be **DISMISSED WITH PREJUDICE**.

Signed August 21, 2025.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE